UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAYLOR T.,[1]  <br>o/b/o Lori T. (deceased),  <br>   Plaintiff,  <br>v.  <br>KILOLO KIJAKAZI,  <br>   Defendant. | )  <br>)  <br>)  <br>)  <br>)  <br>) No. 1:21-cv-01952-MJD-JPH  <br>)  <br>)  <br>)  <br>)  <br>) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Taylor T. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

## I. Background

Claimant applied for DIB and SSI in October 2018, alleging an onset of disability as of September 21, 2018. [Dkt. 13-5 at 2.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Belinda Brown

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

("ALJ") on September 8, 2020. [Dkt. 13-2 at 39.] On November 24, 2020, ALJ Brown issued her determination that Claimant was not disabled. *Id.* at 13. The Appeals Council then denied Claimant's request for review on May 3, 2021. *Id.* at 2. On July 2, 2021, Claimant timely filed her Complaint in this Court seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.² Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 CFR pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 CFR § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's

---

² DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Brown first determined that Claimant had engaged in substantial gainful activity ("SGA") since her alleged onset date of September 21, 2018, but proceeded to the next step of the sequential evaluation in order to "give[] the most benefit to the claimant in the evaluation of her disability claims."[3] [Dkt. 13-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease of the lumbar spine, obesity, depression, and anxiety." *Id.* at 19. The ALJ determined that Claimant's "hepatitis C, obstructive

---

[3] The ALJ noted that Claimant's earnings exceeded the SGA threshold in the first quarter of 2019, the fourth quarter of 2019, and the first quarter of 2020, "and that the claimant therefore was not disabled during such periods." [Dkt. 13-2 at 18-19.]

3

sleep apnea, and diabetes mellitus" were non-severe. *Id.* At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the relevant time period. *Id.* at 20. ALJ Brown then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently; sitting six hours in an eight-hour workday, but should be allowed to alternate positions from sitting to standing after one hour for five minutes; standing and/or walking two hours in an eight-hour workday; and pushing and/or pulling as much as she can lift and/or carry. The claimant can operate bilateral foot controls occasionally. She can climb ramps and stairs occasionally, but can never climb ladders, ropes, or scaffolds. She can balance and stoop occasionally, but can never kneel, crouch, or crawl. The claimant can never work at unprotected heights, never around moving mechanical parts, and never operating a commercial motor vehicle. The claimant is able to perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work). She is able to interact with supervisors, coworkers, and the public occasionally.

*Id.* at 22.

At step four, ALJ Brown found that Claimant was unable to perform her past relevant work during the relevant time period. *Id.* at 28. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as production clerk (DOT 209.587-010), table worker (DOT 739.687-182), and cuff folder (DOT 685.687-014). *Id.* at 29-30. Accordingly, ALJ Brown concluded that Claimant was not disabled. *Id.* at 30.

## IV.  Discussion

Claimant advances three arguments in support of her request to reverse ALJ Brown's decision. She argues that the ALJ erred by (1) inaccurately assessing Claimant's subjective symptoms; (2) failing to consider Claimant's migraines as an impairment; and (3) omitting any discussion as to whether Claimant would be off-task when alternating positions. [Dkt. 18.] In

response, the Commissioner asserts that the Court should affirm the ALJ's decision on the ground that it is supported by substantial evidence. [Dkt. 19.]

Before turning to Claimant's arguments, the Court must address Claimant's history of substantial gainful activity ("SGA"). At step one, ALJ Brown determined as follows:

> The claimant's earnings record reflects earnings from various employers in the fourth quarter of 2018, the first through fourth quarters of 2019, and the first and second quarters of 2020, with most of the earnings not reaching the level of presumptive substantial gainful activity as defined by our regulations (Ex. 10D). However, the earnings record indicates that the claimant earned $3,942 from Tax Experts of America in the first quarter of 2019; $5,707 from Autozoners, Inc., in the fourth quarter of 2019; and $5,095 from Tax Experts of America in the first quarter of 2020 (Ex. 10D). I find that these earnings exceed the level of presumptive substantial gainful activity and that the claimant therefore was not disabled during such periods. Nonetheless, I also find that even if the claimant had not engaged in substantial gainful activity during such periods, she would still be found not disabled for the entire period at issue, as discussed below. Therefore, in giving the most benefit to the claimant in the evaluation of her disability claims, I will proceed to the next step of the sequential evaluation despite the claimant's engagement in substantial gainful activity.

[Dkt. 13-2 at 18-19.] The Commissioner thus argues that Claimant's "work activity precluded her from establishing disability prior to April 1, 2020, the date she may have stopped engaging in substantial gainful activity." [Dkt. 19 at 7.] While Claimant's reply brief does not address this issue,[4] the Commissioner misses the mark. Because Claimant's earnings do not meet the SGA threshold for the third and fourth quarters of 2018, the second and third quarters of 2019, and the second quarter of 2020, the SGA periods referenced by the Commissioner and the ALJ do not appear to continue for more than six months and are therefore likely considered unsuccessful

---

[4] Indeed, Claimant's counsel did not substantively reply to the Commissioner's arguments and instead submitted an oft-recycled brief with little-to-no relevant insight. Doing so is not only a disservice to Claimant, but does not assist the Court in any way. Guidance on the issue of Claimant's SGA would have been welcomed.

5

work attempts. See *Janet R. v. Saul*, 2021 WL 1379487, at *6-7 (N.D. Ill. Apr. 12, 2021). An unsuccessful work attempt ("UWA") is defined as

> an effort to do work in employment or self-employment that discontinues or reduces to the non-Substantial Gainful Activity level after a short time (no more than 6 months) because of the impairment or the removal of special conditions related to the impairment that are essential to the further performance of work. Work performed during a UWA does not prevent a finding of disability.

POMS DI 11010.145(A). "The distinction between six months or less of work on the one hand and more than six months of work on the other, is key." *Janet R.*, 2021 WL 1379487, at *6. While it appears that Claimant engaged in SGA for no more than six months during the fourth quarter of 2019 and the first quarter of 2020, the ALJ did not make a factual finding as to when Claimant actually began her work. Accordingly, Claimant's earnings record will not preclude the Court from judicial review of the ALJ's decision, just as it did not preclude ALJ Brown from engaging with the sequential evaluation.

The Court will now address Claimant's arguments in support of her request to reverse the ALJ's decision.

### A. The ALJ's Subjective Symptom Evaluation is Erroneous

Claimant first argues that ALJ Brown ignored the manner in which Claimant performs activities of daily living and thus erred in her subjective symptom evaluation. [Dkt. 18 at 21.] Pursuant to Social Security Ruling 16-3p, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*; 20 CFR

6

§ 404.1529(c)(1).[5] The ALJ must then consider the claimant's alleged symptoms in light of her daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 CFR § 404.1529(c)(3). This determination is generally deferential unless "after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, at 751 (7th Cir. 2010). The ALJ's subjective symptom evaluation may be patently wrong where she fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (citation and internal quotation marks omitted).

At her September 8, 2020, hearing, Claimant testified that she is unable to "stand for very long" due to pain in her lower back that radiates up to her mid-back as well as down to her tailbone and right leg. [Dkt. 13-2 at 59.] She stated she has experienced back problems for "about four or five years." *Id.* at 60. Claimant's doctor prescribed gabapentin, which she testified "doesn't really help," and she has received injections and "a cauterization, but those nerves grew

---

[5] Social Security Ruling 16-3p, which rescinded Social Security Ruling 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her *credibility*. SSR 16-3p, 2017 WL 5180304, at *2. The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests").

7

back." *Id.* Claimant testified that the injections helped for "about a week" at a time and that she was in physical therapy "in order to get back to the injections." *Id.* at 60, 70. Claimant testified she "might be able to walk 30 minutes, 20 minutes" before needing to stop because of pain; she can stand for "about 10 minutes" before needing to sit down; and she can sit for "maybe an hour" before needing "to get up and move or twist or something [to] try to relieve the pain." *Id.* at 65, 70. Claimant stated she can lift a case of soda, but only with difficulty and pain. *Id.* at 65. She stated she can "stretch up" but "can't stretch down," and that it would take a "while to get back up" if she needed to pick something up off the floor. *Id.* Additionally, Claimant testified to numbness in her feet and hands and sharp pains and swelling in her feet. *Id.* at 69. She stated she props her feet up "at least once or twice during the day" for "about a half hour" at a time. *Id.* at 72.

Claimant further testified that her depression interferes with her ability to work because "at least once or twice a week" she has days where she doesn't "want to get out of bed." *Id.* at 62. She stated she sees a therapist "once every two-to-four weeks," but therapy didn't help much; "if the appointment's on a day where I don't feel like getting out of bed, I usually miss that appointment." *Id.* at 62-63. Although she was on "three different medications," Claimant testified that they had "lost effectiveness." *Id.* at 63. Claimant also testified to having anxiety attacks "at least once a day" that last "about 15 minutes, at least." *Id.* at 67, 69. She stated she has "all different triggers," but that she has an anxiety attack "[j]ust about every time" she's in public. *Id.* at 68. When having an anxiety attack, Claimant testified, "I just separate myself from the situation and just sit and try to calm myself down, take deep breaths." *Id.* at 68.

Regarding daily activities, Claimant testified she is able to take care of her personal hygiene, do laundry, and cook dinner. *Id.* at 66. She tries "to help with household chores," and

8

occasionally helps with the dishes, but usually needs "to sit down after, like, 20 minutes." *Id.* She explained, "I spend my days sitting on my bed, watching TV. I do get up occasionally and walk outside. Maybe sit outside in the sun for a little while. But most often, I'm at home." *Id.* If she goes grocery shopping, Claimant testified that she will "lean on the cart" for support. *Id.* at 70.

In November 2018, Claimant's fiancé, Jeremie, completed a Third Party Function Report in which he stated that Claimant has "physical difficulties dressing" and takes a "bath instead of stand[ing] in [the] shower." [Dkt. 13-6 at 17.] Jeremie reported that Claimant is unable to "walk or stand for long periods" and that her "physical pain limits most physical activities." *Id.* at 17, 21. He stated that, when cooking, Claimant takes "frequent breaks" since her "back pain requires sitting down," and that doing laundry or sweeping takes a "little longer due to physical pain." *Id.* at 18. Jeremie also reported that Claimant's depression causes her to "keep to herself more than she used to" and "makes concentration difficult." *Id.* at 21. According to Jeremie, Claimant's "depression and anxiety make work difficult" and "changes in routine cause anxiety and panic attacks." *Id.* at 22. He also provided the following narrative:

> Over the past few months I have watched her emotional behavior decline. Depression has caused her to withdraw from everything, constant panic attacks over simple things, loss of appetitive and lack of interest. She sleeps all day and is up all night. Her back pain is getting worse. She can barely walk, has difficulty getting out of bed or standing up. She is in constant pain.

*Id.* at 23.

In her decision, the ALJ discredited Claimant's subjective symptoms on the grounds that her alleged degree of limitation was contradicted by Claimant's activities of daily living, the objective medical evidence, and Claimant's noncompliance with treatment. [Dkt. 13-2 at 24.]

Turning first to Claimant's daily activities, ALJ Brown stated as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the evidence does not

9

> support that degree of limitation. Despite her allegations, she is able to independently manage her personal care and hygiene, prepare simple meals, and do light household chores, such as sweeping and laundry. She can drive a car and go out alone. She shops in stores and online. While she has no income, she is capable of managing her finances. She visits close friends a few times a month. She follows written and spoken instructions well and finishes what she starts (Hearing testimony, Ex. 3E).

*Id.* This reasoning is not based on substantial evidence. As detailed above, the record reveals that Claimant manages her personal care, prepares meals, performs chores, and shops with significant limitations due to her physical pain. As just one example, when attempting to help with chores, Claimant testified she needs "to sit down after, like, 20 minutes." *Id.* at 66. It is thus clear that the ALJ mischaracterized the record and impermissibly ignored Claimant's "qualifications as to *how* [s]he carried out those activities." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (emphasis in original).

Moreover, none of the daily activities mentioned logically support the ALJ's determination that Claimant was less limited than alleged. *See Cullian v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why [performing daily activities] was inconsistent with [the claimant's] description of her pain and limited mobility."). Indeed, the Seventh Circuit has repeatedly emphasized that the "sporadic performance" of such activities "do[es] not establish that a person is capable of engaging in substantial physical activity," nor do[es it] constitute "substantial evidence that she does not suffer disabling pain." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)); *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014). Simply put, a claimant's "persistence in struggling through household chores despite her pain does not mean, as the ALJ extrapolated, that she can manage the requirements of the workplace," since "a person performing chores has flexibility in scheduling, can receive help, and is not held to a minimum

standard of performance, unlike an employee." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (citations omitted). ALJ Brown's reliance on Claimant's activities of daily living to reject her subjective symptoms is thus unsupported by the record and requires reversal.

With regard to the objective medical evidence, ALJ Brown stated as follows:

> The objective medical evidence also does not support the degree of limitation alleged. Throughout the period at issue, the claimant received minimal care, consisting largely of routine follow up with unremarkable exams. She was not consistently compliant with treatment recommendations, including physical therapy and medication (See, e.g., Ex. 1F/13-19; 2F/37; 3F/11; 7F/6, 31, 38, 55, 56, 74; 9F/11; 10F/9; 12F/15, 20, 28, 36, 37; 19F/7).

[Dkt. 13-2 at 24.] Again, this analysis is flawed for several reasons. First, "[e]ven if the ALJ thought that the objective evidence was insufficient, pain alone can be disabling," and "[t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence." *Stark*, 813 F.3d at 687-88 (citations omitted). That said, there is ample documentation in the record that supports Claimant's allegations of pain and other symptoms. For example, in July 2019, a physical exam revealed limited range of motion in Claimant's lumbosacral spine extension, pain with extension and flexion, tenderness to touch, and a positive seated straight leg raise test. [Dkt. 13-7 at 326.] Claimant's diagnoses included degeneration of lumbar or lumbosacral intervertebral disc and lumbar facet arthropathy. *Id.* at 327. In August 2019, Claimant's bilateral straight leg raise tests were positive and physical therapist Amber Russell noted that Claimant was limited in her ability to stand, walk, and bend, all of which affected her ability to perform household duties. *Id.* at 330-32. It is not at all clear why the ALJ found such notations to be contrary to Claimant's allegations.

Similarly, the ALJ's characterization of Claimant's "unremarkable exams" is questionable at best. The ALJ downplayed how, at mental health appointments, "she frequently reported a sad, nervous, and anxious mood and, at times, presented with a blunted or constricted affect" by

stating that "her mental status examinations were largely unremarkable." [Dkt. 13-2 at 25.] In so claiming, the ALJ failed to mention how Claimant regularly endorsed passive suicidal ideation, [Dkt. 13-7 at 63, 109, 129, 135, 326, 409]; "thoughts of cutting herself," *id.* at 135; and "occasional thoughts that she would be better off dead," *id.* at 52, 348. Further, on January 7, 2019, Andrew Slaton, PMHNP, opined that "patient is unable to participate in activities to assist her in achieving employment for the next year due to the severity of her depressive/anxious symptoms." *Id.* at 134. On September 10, 2019, Brannon Hart, Ph.D., reported that, while Claimant's mood and functioning appeared stable, her PHQ-9 and GAD-7 scores indicated elevated symptoms of depression and anxiety. *Id.* at 341. On August 10, 2020, Anita Rajagopal, MD, documented that Claimant had "[s]evere depression." *Id.* at 421. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). That obligation was not fulfilled here.

Additionally, the ALJ failed to consider the reasons why Claimant was not consistently compliant with her treatment. For example, in December 2018, Claimant "couldn't afford to refill any medications except Prozac and metformin due to loss of insurance." [Dkt. 13-7 at 129.] She also had to cancel scheduled spinal injections "due to cost" because she was "without insurance." *Id.* at 105. In July 2019, Claimant "[c]ouldn't take time off work to go to therapy; by the time she was able to, the PT order had expired." *Id.* at 320. It was also noted at this time that, "[b]ecause of current A1C we may not be able to do steroid injections in the future." *Id.* at 327. Then, in May 2020, Claimant again "lost insurance coverage" and that is why she "[n]ever established with endo or at least stopped following up." *Id.* at 391. As the Seventh Circuit has explained,

> [i]n assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment. SSR 96-7p, 1996 SSR LEXIS 4. However, the ALJ "must not draw any inferences" about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care. *Id.* An inability to afford treatment is one reason that can "provide insight into the individual's credibility." *Id.*

*Craft*, 539 F.3d at 679. Just like in *Craft*, ALJ Brown drew a negative inference from Claimant's lack of consistent medical care without questioning Claimant about her noncompliance and while ignoring records demonstrating that Claimant was unable to pay for regular treatment and medicine. These errors require remand.

### B. The ALJ Erred by Failing to Consider Claimant's Migraines as an Impairment

Claimant additionally argues that the ALJ erred by failing to consider her migraines as an impairment. [Dkt. 18 at 29.] Step two of the disability determination requires the ALJ to determine whether the claimant has any medically determinable impairments based on objective medical evidence. 42 U.S.C. § 423(d); 20 CFR § 404.1520(a)(4)(ii); 20 CFR § 404.1521. The ALJ must then categorize each impairment as "severe" or "non-severe," which depends on whether the impairment, either individually or in combination with other impairments, "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 CFR § 404.1520(c); 20 CFR § 404.1522. The ALJ is required to "consider the combined effect of all [of the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 CFR § 404.1523(c).

Here, the record reveals that Claimant often complained of headaches/migraines to her providers. *See*, *e.g.*, [Dkt. 13-7 at 63, 69, 129, 104, 109, 136, 320, 326, 331, 344, 349, 357, 366, 386, 395, 403, 409, 417, 422]. Then, in May 2019, Claimant saw Jason White, MD, specifically for her headaches. [*Id.* at 353.] Dr. White diagnosed Claimant with chronic migraines, and noted

13

that "this is most likely migraine without aura, possibly with tension [headache] mixed in." *Id.* at 354. Further, at her hearing, Claimant testified to having migraines twice a week for about three years. [Dkt. 13-2 at 72, 74.] The migraines typically last "three-to-four hours," but "[s]ometimes they will last all day," and cause sensitivity to light, sensitivity to sound, and nausea. *Id.* at 73. To alleviate the migraines, Claimant testified she takes medication and sometimes needs to lie down and close her eyes. *Id.* at 73. However, Claimant testified that she is limited to taking "one to two pills every 24 hours," so she is unable to take any if she has more than two migraines in a week. *Id.* at 74. She stated that within the last year the migraines have "gotten bad" and she "suffer[s] through them." *Id.* at 74, 75.

Despite this, the sole mention of migraines in the ALJ's decision is as follows: "[Claimant] reported having migraines twice weekly, during which she experiences nausea and sensitivity to light and sound." *Id.* at 24. ALJ Brown did not consider whether Claimant's migraines constituted an impairment at step two and thus made no findings as to whether they constituted severe or non-severe impairments, alone or combined. *See Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1004 (N.D. Ill. 2008) ("Even impairments that are not severe on their own must be considered because the combination of impairments may be severe.") (citing 20 CFR § 404.1523). Instead, the ALJ stated at step two, "the overall evidence of record supports a finding that any other condition, not specifically mentioned in this decision, but that may be mentioned briefly in the record is not considered severe." [Dkt. 13-2 at 19.] This sort of boilerplate base-covering is insufficient to convince this Court that meaningful review has occurred, especially when ALJ Brown chose to ignore multiple lines of evidence regarding Claimant's migraines and treatment of such. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("An ALJ may not ignore entire lines of evidence.") (citing *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)).

Ultimately, there is no indication that ALJ Brown fulfilled her duty to consider all of the relevant evidence at step two because she failed to articulate any analysis of evidence related to Claimant's migraines. And while an error at step two is harmless if the relevant evidence is considered elsewhere in the decision, *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015), ALJ Brown failed to consider it at all. Because the "scope and severity" of a claimant's impairments evaluated at step two lays the foundation for the ALJ's remaining determinations, including the claimant's RFC and the questioning posed to the vocational expert, "remand is warranted where the ALJ fails to consider the entirety of the evidence at Step Two." *Ridinger*, 589 F. Supp. 2d at 1005 (citing *Unger v. Barnhart*, 507 F. Supp. 2d 929, 939 n.3 (N.D. Ill. 2007)). That is the case here, and therefore remand is necessary.[6]

### V.  Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  27 MAY 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.

---

[6] Having found other bases for remand, the Court need not reach Claimant's remaining argument. *See* [Dkt. 18 at 28]. On remand, the ALJ shall take care to determine—and articulate any such determination—whether Claimant would be off-task while alternating positions.